UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

J & J SPORTS PRODUCTIONS, INC.,

        Plaintiff,

v.

B O B LOUNGE, LLC, d/b/a B.O.B.'Z
LOUNGE, and SHARON O'NEAL,

        Defendants.
_____/

Case No. 17-11350

Paul D. Borman
United States District Judge

David R. Grand
United States Magistrate Judge

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND AWARDING DAMAGES

In this action, Plaintiff J & J Sports Productions, Inc. alleges that Defendants B O B Lounge, LLC ("**B O B Lounge**") and Sharon O'Neal violated federal law by illegally broadcasting a boxing match on May 3, 2014. Defendants have failed to defend or otherwise appear in this action. Plaintiff now moves for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) and seeks statutory damages in addition to attorney's fees and costs against the Defendants jointly and severally.

A hearing on this matter was held on December 6, 2017. For the reasons stated on the record and those set forth below, the Court will grant Plaintiff's motion for default judgment and award damages, fees, and costs in the amount of $7,733.47.

### I. BACKGROUND

Plaintiff filed its Complaint on April 27, 2017. (ECF No. 1, Compl.) The

lawsuit was brought against B O B Lounge (d/b/a B.O.B.'z Lounge), a commercial establishment in Detroit, Michigan, as well as Sharon O'Neal, whom Plaintiff alleges on information and belief to be the owner, operator, or in some other fashion the person in charge of or possessing control over B O B Lounge. (Compl. ¶¶ 7-10.)

In a 2015 Opinion and Order issued in a very similar case filed by the same Plaintiff, this Court described Plaintiff's business model as follows:

> Plaintiff, in an attempt to combat piracy of its programs, hires investigative agencies who retain auditors who visit various commercial locations that have no record of paying the required fee. For a "commercial fee", a commercial establishment can receive an unscrambled signal enabling the business to view the program either through Plaintiff or an authorized distributor. The fee is determined by the number a "Rate Card" that ties the fee to the seating capacity of the business.

*J & J Sports Prods., Inc. v. Matti*, No. 14-12981, 2015 WL 900478, at *1 (E.D. Mich. Mar. 3, 2015) (Borman, J.).

In this case, Plaintiff alleges that it paid for and was contractually granted the exclusive nationwide television distribution rights to the Floyd Mayweather, Jr. v. Marcos Rene Maidana WBC Welterweight Championship Fight (referred to herein as the "**Program**"), including all under-card bouts and fight commentary in the television broadcast of the event. (Compl. ¶¶ 10, 12.) Plaintiff claims that Defendants illegally broadcast the program on May 3, 2014 in violation of the Communications Act of 1934, as amended, 47 U.S.C. § 605, *et seq.*, and the Cable Television

Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. § 553, *et seq*. (Compl. ¶¶ 10-26; *see also* ECF No. 10, Pl.'s Mot. Ex. 6, Affidavit of Andre Wallace.) Plaintiff also alleges that the broadcast constituted conversion under Michigan common law. (Compl. ¶¶ 27-30.) Andre Wallace, an investigator hired by Plaintiff, avers in a signed affidavit dated September 23, 2015 that there were approximately 80 patrons in the establishment on the date of the broadcast. (Wallace Aff. ¶ 3.)

In the Motion for Default Judgment, Plaintiff asserts that it served both Defendants with the Summons and Complaint at the same address on May 5, 2017. (Pl.'s Mot. at 2, Pg ID 23; Ex. 2, Return of Service; Ex. 3, Return of Service.) After Defendants failed to answer the Complaint or otherwise plead or defend in the action, Plaintiff filed a Request for a Clerk's Entry of Default on June 6, 2017, and it was granted the same day. (ECF Nos. 8, 9.)

A hearing on Plaintiff's Motion for Default Judgment, as well as an analogous motion for default judgment in a separate action involving the same parties and similar facts, *see J & J Sports Productions v. B O B LOUNGE, LLC, et al.*, No. 17-10775, was scheduled to be held on October 26, 2017. The hearing was postponed after Plaintiff's counsel represented that the parties were likely to settle the matter out of court, but Plaintiff's counsel informed the Court several weeks later that attempts to finalize the settlement had been unsuccessful. The Court held a

rescheduled hearing on the two motions for default judgment on December 6, 2017. Defendants did not attend the hearing.

## II. LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 55(b), a judgment by default may be entered against a defendant who has failed to plead or otherwise defend against an action. In order to obtain judgment by default, the proponent must first request the clerk's entry of default pursuant to Rule 55(a). *See Hanner* v. *City of Dearborn Heights,* No. 07-15251, 2008 WL 2744860, at *1 (E.D. Mich. July 14, 2008). Once a default has been entered by the clerk's office, all of a plaintiff's well-pleaded allegations, except those relating to damages, are deemed admitted. *Antoine* v. *Atlas Turner, Inc.,* 66 F.3d 105, 110 (6th Cir. 1995); *see also Ford Motor Co.* v. *Cross,* 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citation omitted).

Once a default is obtained, the party may then file for a default judgment by the clerk or by the court. Fed. R. Civ. P. 55(b). If the plaintiff's well-pleaded allegations are sufficient to support a finding of liability as to the defendant on the asserted claims, then the Court should enter a judgment in favor of the plaintiff. *See Cross,* 441 F. Supp. 2d at 848. Although Rule 55(b)(2) does not provide a standard to determine when a party is entitled to a judgment by default, the case law establishes that the court must exercise "sound judicial discretion" when determining whether to enter the judgment. Wright & Miller, 10A Federal Practice & Procedure,

§ 2685 (3d ed. 1998) (collecting cases). After a court determines that a default judgment should be entered, it will determine the amount and character of the recovery awarded. *See id.* § 2688 (collecting cases).

### III. DISCUSSION

**1. Service**

"[B]ecause a party has no duty to plead until properly served, sufficient service of process is a prerequisite to entry of default." *Am. Auto. Ass'n v. Dickerson*, 995 F. Supp. 2d 753, 756 (E.D. Mich. 2014) (quoting *Russell v. Tribley*, No. 10–14824, 2011 WL 4387589, at *8 (E.D. Mich. Aug. 10, 2011) (collecting cases)). Under the Federal Rules of Civil Procedure, a party may serve a competent individual of suitable age and who has not waived service in a judicial district of the United States by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:
> > (A) delivering a copy of the summons and of the complaint to the individual personally;
> > (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> > (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Here, service was effected on May 5, 2017 by in-person delivery to Defendant O'Neal. (Pl.'s Mot. Ex. 3, Pg ID 60; ECF No. 8, Aff. Attached to Request for Clerk's Entry of Default.) This method of service comports with Fed. R. Civ. P. 4(e)(2)(A). This method of service also comports with Michigan Court Rule 2.105, which provides that process may be served on a resident or nonresident individual by either "delivering a summons and a copy of the complaint to the defendant personally" or by sending a copy "by registered or certified mail, return receipt requested, and delivery restricted to the addressee." Thus, under either Fed. R. Civ. P. 4(e)(1) or Fed. R. Civ. P. 4(e)(2)(A), Plaintiff properly effected service on Defendant O'Neal.

Defendant B O B Lounge is a limited liability company. The Federal Rules of Civil Procedure provide that "a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name" may be served

> by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h). Records from Michigan's Department of Licensing and Regulatory Affairs identify Defendant O'Neal as the "Resident Agent" of Defendant

B O B Lounge.[1] On that basis, the Court finds that Defendant B O B Lounge was properly served under Fed. R. Civ. P. 4(h).

The Court therefore deems Defendants "to have admitted all of the well pleaded allegations in the Complaint, including jurisdictional averments." *Cross*, 441 F. Supp. 2d at 846. The relevant inquiries, then, are whether Plaintiff's allegations are sufficient to support a finding of liability under the asserted causes of action, and if so, whether an award of damages is appropriate.

### 2. Liability

Pursuant to 47 U.S.C. § 553(a)(1), "no person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 605(a), on the other hand, applies to satellite transmissions and provides in relevant part that a person who receives, transmits, or assists in transmitting any communication by wire or radio may not divulge or publish that communication. *See Nat'l Satellite Sports, Inc. v. Eliadis, Inc.,* 253 F.3d 900, 911 (6th Cir. 2001) (noting the Cable Communications Policy Act of 1984 was enacted to "address a problem which is increasingly plaguing

---

[1]*See* https://cofs.lara.state.mi.us/CorpWeb/CorpSearch/CorpSummary.aspx?ID=801708732&SEARCH_TYPE=1 (visited Dec. 28, 2017).

the cable industry-the theft of cable service."); *see also Joe Hand Promotions, Inc. v. KSD, Inc.,* No. 3:13CV951, 2014 WL 4675264, *6–7 n. 1 (N.D. Ohio, Sept.18, 2014) (examining the legislative histories of both statutes and noting in a footnote that there is some struggle regarding the interplay between the two statutes). "Despite their facial similarity, Sections 553 and 605(a) reach different conduct. . . . Section 605(a) may be read as outlawing satellite signal piracy, while Section 553 bans only the theft of programming directly from a cable system." *Cablevision of Michigan, Inc. v. Sports Palace, Inc.*, 27 F.3d 566 (6th Cir. 1994) (unpublished).

In this case, where Plaintiff does not know how the Defendant pirated the signal (via satellite or through over a cable system) it is pro forma to plead both statutes. Plaintiff cannot collect damages under both statutes, however. *See J & J Sports Prods., Inc. v. Bader Matti*, No. 14-12981, 2015 WL 900478, at *2 (E.D. Mich. Mar. 3, 2015); *Joe Hand Promotions, Inc. v. Granada Lounge, Inc.,* 11–13062, 2012 WL 447272, *2 (E.D. Mich. Feb.13, 2012).

The Complaint and the Motion for Default Judgment (including its exhibits) establish that Defendants violated both § 605 and § 553 by intercepting and displaying the Program on Saturday, May 3, 2014 at their establishment, B.O.B.'z Lounge, operating at 17456 Harper Ave. Detroit, Michigan ("the bar") for the purpose of direct or indirect commercial advantage and private financial gain. Specifically, Plaintiff has established: (1) that Defendants did not pay to receive or

8

publish the Program (Compl. ¶ 14); (2) that Defendant O'Neal is the "the owner(s), and/or officer(s), shareholder(s), and/or operator(s), and/or licensee(s), and/or permitee(s), and/or person(s) in charge, and/or an individual(s) with dominion, control, oversight and management" over the bar (Compl. ¶ 10); (3) that the price Defendants would have paid had their purchased the rights to show the program legally would have been $2,200 (Pl.'s Mot. Ex. 7, Rate Card); and (4) that Andre Wallace, Plaintiff's investigator, visited the bar on May 3, 2014 at around 11:57 PM and observed that approximately 80 people were in the bar, which had five televisions displaying the Program (Pl.'s Mot. Ex. 5, Wallace Aff.).

Courts in this District and elsewhere have held that to state a claim against an individual under § 605 or § 553, a plaintiff must allege facts establishing that the individual had a right and ability to supervise the infringing activities and that the individual had a direct financial interest in those same activities. *See Joe Hand Prod., Inc. v. Cain,* No. 06–12213, 2006 WL 2466266, at *2 (E.D. Mich. Aug. 24, 2006); *J & J Sports Productions, Inc. v. Stanley,* 2014 WL 2763635 (E.D. Mich. June 18, 2014) (granting motion for default judgment against individual defendants where the plaintiff had pled the individual defendant had supervisory control over the activities and received a financial benefit); *J & J Sports Prods., Inc. v. Walia,* 2011 WL 902245 *3 (N.D. Cal. Mar. 14, 2011) (collecting cases and observing that "it appears that all courts addressing the issue have applied the

copyright standard for individual liability to violations of § 553 and § 605."); *J & J Sports Prods., Inc. v. Ribeiro,* 562 F. Supp. 2d 498, 501 (S.D.N.Y. 2008).

Here, Plaintiff has alleged that Defendant O'Neal was an owner, operator, officer and/or person in charge with "dominion, control, oversight and management of the commercial establishment" and that she was either aware of and approved the unauthorized display of the Program or was physically present at the time the Program was displayed. (Compl. ¶ 10.) Because Defendant O'Neal is alleged to be an owner of Defendant B O B Lounge, it is logical to conclude that she received a financial benefit from displaying the Program. Taking these well pled allegations as true, the Court finds that Plaintiff has established individual liability as to Defendant O'Neal as well as Defendant B O B Lounge under § 605 and § 553.[2]

### 3. Damages

As Plaintiff correctly notes, when a defendant is liable under both § 553 and § 605, the plaintiff may only recover under one of those section. *See Stanley*, 2014 WL 2763635, at *2 (citing *J & J Sports Productions, Inc.*

---

[2] Although the Complaint asserts a third claim for common-law conversion (Compl. ¶¶ 27-30), Plaintiff makes no reference to that claim in the Motion for Default Judgment, and has not otherwise pursued it. The Court will therefore treat that claim as abandoned. *See J & J Sports Prods., Inc. v. Matti*, No. 13-13963, 2015 WL 143932, at *1 (E.D. Mich. Jan. 12, 2015) (Borman, J.) (noting, in granting default judgment in another action filed by Plaintiff, that "Plaintiff does not pursue its state law claim of conversion and therefore this Court will treat that claim as abandoned").

*v. Trier*, 2009 U.S. Dist. LEXIS 6415 (E.D. Mich. Jan. 29, 2009)). In the present case, Plaintiff elects to recover under 47 U.S.C. § 605. (Pl.'s Mot. at 7, Pg ID 32.)

Under § 605, the "aggrieved party" may choose between actual and statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). Here, Plaintiff requests statutory damages. (Pl.'s Mot. at 7, Pg ID 32.) Per the statute, Plaintiff can recover statutory damages for each violation of not less than $1,000 or more than $10,000 as determined by the Court. 47 U.S.C. § 605(e)(3)(C)(i)(II). But where the court finds that the violation was committed "willfully and for the purposes of direct or indirect commercial advantage or private financial gain" the court can increase the award by the amount of $100,000 per violation. 47 U.S.C. § 605(e)(3)(C)(ii).

Courts in this District look to certain facts to calculate damages in actions like the instant case, including the number of patrons in the establishment at the time of the violation, the seating capacity of the establishment, the rate charged by the plaintiff for the broadcast, and whether the defendant charged a cover to patrons or "was likely to have obtained significant profits in another manner." *Stanley*, 2014 WL 2763635, at *2 (quoting *Trier*, 2009 U.S. Dist. LEXIS 6415, at *3). "The damages awarded by the Court 'should take into account the proportionality between the loss suffered by the plaintiff and the profit gained by the defendant.'" *Granada Lounge*, 2012 WL 447272, at *2 (quoting *Ribeiro*, 562 F. Supp. 2d at 501). In *Trier*, the court explained that

11

> [w]hen the exact number of patrons is unknown, courts will award a flat sum based on considerations of justice. When the exact number of patrons is known, the court will based the award on the number of patrons in the establishment who viewed the unauthorized showing multiplied by a number set by the court. This number varies widely from $20 to $300, although most courts set a number around $50.

*Trier*, 2009 U.S. Dist. LEXIS 6415, at *3 (quoting *Ribeiro*, 562 F. Supp. 2d at 501-02) (internal citation and quotation marks omitted).

In this case, Plaintiff has evidenced that there were approximately 80 patrons at the bar. There is no allegation of a cover charge. Per the Rate Card, a commercial establishment with seating of 0-100 would have been charged a rate of $2,200.00 to display the Program. (Pl.'s Mot. Ex. 7, Rate Card.)

Where the number of patrons is known, that fact may serve as a benchmark for the calculation of damages. Because that was the case in *Matti*, a similar lawsuit brought by Plaintiff before this Court in 2015, the Court was

> inclined to follow the direction of other courts in this district who have found *Trier* and *Ribeiro* instructive and have taken the number of patrons in the bar and then multiplied that number by dollar amount somewhere between $20 and $300. *See Ribeiro,* 562 F.Supp.2d at 501–02 (ultimately multiplying the number of patrons by the pay-per-view residential rate of $54.95 and then doubling that amount to $1,500 to meet the statutory minimum, and then multiplying that amount by three because the violation was wilful); *see also Granada Lounge,* 2012 WL 447272, at *2–3 (finding that the commercial rate defendant would have been charged (rounded up to the statutory minimum) was appropriate while the higher base award of $10,000 was not justified because a cover was not charged and there were only 68 to 79 people

12

> in attendance, but then multiplying the $1,000 base award by three for wilfulness.); *Trier,* 2009 U.S. Dist. LEXIS 6415 at *3 (finding that where there were only 21 people at the establishment, where no cover was charged, and the commercial rate would have been $1600, the court found that $1600 was an appropriate base award and multiplied by three based on the wilfulness of the violation.).

*Matti*, 2015 WL 900478, at *4. The Court went on to note that in *Trier*, *Ribeiro*, and *Granada Lounge*, the Defendants had not imposed a cover charge on their patrons and had not displayed any other unauthorized programs. Both of those factors were present in *Matti*, however, and so this Court considered a $50 flat per-patron fee to be warranted, which, multiplied by the 120 patrons present at the broadcast at issue in *Matti*, made for a base award of $6,000. *See id.* Then, again because of the cover charge and the additional violation, the Court multiplied the base award by a factor of 4, resulting in total damages of $24,000. (The other violation was the subject of a separate lawsuit by Plaintiffs, in which this Court used a similar calculus to set damages at $22,000. *See J & J Sports Prods., Inc. v. Matti*, No. 13-13963, 2015 WL 143932, at *5 (E.D. Mich. Jan. 12, 2015).)

Like *Matti*, this case is distinguishable from *Ribeiro*, *Granada Lounge*, and *Trier*, because unlike in those cases, Defendants here did commit another, similar violation of the statutes.[3] But importantly, this case is also distinguishable from *Matti*

---

[3] As noted above, that violation is the subject of a separate lawsuit filed by Plaintiff against Defendants. *See J & J Sports Productions v. B O B LOUNGE, LLC, et al.*, No. 17-10775.

13

itself, because there is no evidence or allegation that Defendants collected a cover charge from the patrons. A more useful comparison can be drawn between this case and another of this Court's recent cases involving an unauthorized broadcast action brought by Plaintiff: *J & J Sports Prods., Inc. v. Ziggy's Bar & Grill, Inc*, No. 15-11585, 2015 WL 7567505 (E.D. Mich. Nov. 25, 2015) (Borman, J.). In *Ziggy's Bar & Grill*, the defendants had 45 patrons in the bar at the time of the unauthorized broadcast and charged a ten dollar cover, though there were no allegations of any other unauthorized broadcasts. This Court used the same per-patron flat figure of $50, resulting in a base award of $2,250. Noting then that the violation was willful based on the cover charge, and pointing out that the base award was only $50 more than the defendants would have paid legally (and thus "[did] not create much of a deterrent"), this Court multiplied the base award by three for a total damages award of $6,750. *See id.* at *6.

*Ziggy's Bar & Grill* is a close analogue to this case: the only material differences are that this case involves more patrons, and allegations of a separate violation one year later but not of a cover charge. The number of patrons already influences the base award as a multiplier, and so the relevant question is how the calculus here should differ from that in *Ziggy's Bar & Grill* given that the exacerbating factor is a separate violation rather than a cover charge. The Court finds that a separate violation is a less egregious exacerbating factor than a cover charge

14

for two reasons. First, at least in this case, the separate violation is itself legally actionable and can justify additional liability for Defendants in an independent proceeding. Second, to the extent that damages in a case like this are meant to penalize a defendant's intention to illegally profit from the broadcast, the imposition of a cover charge more directly reflects that intention than the existence of a separate violation—at least without some evidence or allegation that the defendant advertised the broadcast to its patrons beforehand, which there is not here.

Still, a separate violation is sufficient to justify a finding of willfulness. *See G & G Closed Circuit Events, LLC v. Port Bar, Inc.*, No. 14-12984, 2015 WL 144588, at *2 (E.D. Mich. Jan. 11, 2015) ("For purposes of § 605, conduct is 'willful' where there were repeated violations over time.") (quoting *Joe Hand Promotions, Inc. v. Easterling*, 08–1259, 2009 WL 1767579, *4 (N.D. Ohio June 22, 2009)). The Court concludes that Defendants' conduct was willful based on the separate violation, but that it justifies a less harsh sanction than the cover charge in *Ziggy's Bar & Grill* did. In that case, the base rate was $50 and the "willfulness multiplier" was a factor of three; here, the Court will award damages based on a per-patron rate of $35 and a multiplying factor of two. With 80 patrons, this results in a base award of $2,800 and a final award of $5,600.

### 4. Attorney fees and costs

Pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), the court "shall direct the recovery

of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." In the present case, Plaintiff's counsel has submitted an affidavit stating that Plaintiff incurred a total of $2,133.47 in fees and costs, representing $1,641.50 in attorney fees based on an hourly rate of $245.00, and $491.97 in costs. (Pl.'s Mot. at Pg ID 41-44.)

Plaintiff's counsel supports his contention that a $245.00 billable rate is reasonable by submitting the Michigan State Bar's "2014 Economics of Law Practice Attorney Income and Billing Rate Summary Report." (Pl.'s Mot. Ex. 9.) The Court concludes that $245 is a reasonable hourly rate, as the 2013 median hourly rate for both Oakland County (where Plaintiff's counsel's firm is located) and Wayne County (where B O B Lounge is located) is $250. Thus, the Court will award Plaintiff a total award, including attorney fees and costs, of $7,733.47.

IV. CONCLUSION

For these reasons and those stated on the record, the Court hereby GRANTS Plaintiff's Motion for Default Judgment and AWARDS damages in the amount of $7,733.47.

IT IS SO ORDERED.

                                                     s/Paul D. Borman  
                                                     Paul D. Borman  
                                                     United States District Judge

Dated: January 5, 2018

CERTIFICATE OF SERVICE

  The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 5, 2018.

                 s/D. Tofil
                 Deborah Tofil, Case Manager